**Aaron THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–99–00319–CR.**

Court of Appeals of Texas, Tyler.

Nov. 8, 2000.

---

**850**

Philip C. Fletcher, Palestine, for appellant.

Douglas F. Lowe, Palestine, for appellee.

Panel consists of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

Aaron Thompson, Appellant, was charged with aggravated assault on a public servant. After a trial by jury, he was found guilty and assessed punishment at ten years of imprisonment. On appeal, Appellant raises five issues for our consideration. We affirm.

### BACKGROUND

The evidence at trial showed that on the night of September 20, 1997, Appellant and his former girl friend, Linda Brasher ("Brasher"), happened to be at the same night club in Palestine, Texas. They spent some time together dancing and drinking at the club. Brasher went home around 11:30 p.m. A few minutes later, Appellant, although uninvited, went to Brasher's home and tried to make love to her. Brasher told Appellant that he should leave because her new boyfriend, Clinton Musick ("Musick"), was on his way over to her house. Appellant went out to his vehicle and returned armed with a sawed off shotgun and a pistol. Appellant "pumped" the shotgun and stated that he would kill Musick if he came to Brasher's house. Brasher telephoned Musick and warned him not to come to her house. Musick reported the situation to the police, and officers were dispatched to the scene. Brasher told Appellant that the police were on their way and Appellant replied, "I'll shoot them too." However, Appellant left Brasher's house and drove away.

When the police arrived at Brasher's house, she described Appellant's threats to kill Musick and the police. A police radio dispatch was sent out for Appellant which also warned officers that Appellant was armed. Three officers responded. Anderson County deputy sheriff, Brian Daniels ("Daniels"), located Appellant's vehicle, followed him in his police vehicle into a rural residential driveway, and observed Appellant's vehicle disappear into a wooded area. Daniels then saw Appellant come out of the woods holding a shotgun. Appellant began walking down the driveway toward Officer Daniels who then backed out of the driveway onto the main road. By loudspeaker, Daniels identified himself as a deputy sheriff, instructed Appellant to put his weapon down and to lie down on the ground. Daniels gave these instructions twice but Appellant did not comply. During this time, Daniels had put his spotlight and takedown lights on Appellant which illuminated the area.

Constable Larry Bennett ("Bennett") and Deputy Sheriff Kraig Betterton ("Betterton") then arrived on the scene each in separate, police vehicles. Bennett and Betterton also spotlighted and put their takedown lights on Appellant. Bennett, standing behind his vehicle, identified himself to Appellant by loudspeaker and instructed him three to five times to put his weapon down. Appellant was personally acquainted with Bennett and responded by telling Bennett, "Larry get out of here. Get out. It's none of your business." Appellant then approached Bennett's vehicle with his shotgun raised and pointed it at Bennett. When he was 25 to 30 yards away, he took an anchor stance and fired the shotgun in the direction of Bennett. The officers returned fire at Appellant. Appellant fell to the ground and crawled backwards still holding the shotgun. Ap-

pellant then turned around, raised the shotgun while up on his elbows, and fired the shotgun again toward Bennett. The officers again returned fire and this time a round hit Appellant. The officers approached Appellant, moved the shotgun away, and took him into custody. A loaded pistol was found in Appellant's back pocket.

### SUFFICIENCY OF THE EVIDENCE

■ In issues three and four, Appellant asserts that the evidence was legally and factually insufficient to support a verdict of guilty for the offense of Aggravated Assault on a Public Servant. We will address these two issues together. The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.E.2d 560 (1979). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more that a mere modicum of evidence." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). All conflicts in the evidence should be resolved in favor on the verdict, and every reasonable inference indulged. *Sneed v. State*, 803 S.W.2d 833, 837 (Tex.App.—Dallas 1991, pet. ref'd). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the testimony of each witness. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim. App.1981).

Once an appellate court has determined that the evidence is legally sufficient to support the verdict, the court must then proceed to review the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In conducting a factual sufficiency review, the appellate court must view all of the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming

weight of the evidence as to be clearly wrong and unjust. *Id.* at 135; *Bigby v.State*, 892 S.W.2d 864, 875 (Tex.Crim. App.1994). However, this court must not substitute its judgment for that of the jury. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex.App.—El Paso 1996, pet. ref'd).

A defendant commits assault when he intentionally or knowingly threatens another with imminent bodily injury. TEX. PEN.CODE ANN. § 22.01(a) (Vernon 1994). Aggravated assault occurs if, in the course of committing assault, the defendant "uses or exhibits a deadly weapon during the commission of the assault." TEX. PEN.CODE ANN. § 22.02 (Vernon 1994). An offense under section section 22.02 is a first degree felony if the offense if committed against a person the defendant "knows is a public servant while the public servant is lawfully discharging an official duty...." *Id.; Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.—Corpus Christi 1997, pet. ref'd). The actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. TEX. PEN. CODE ANN. § 22.02(c) (Vernon 1994).

The evidence is uncontroverted that Bennett was a public servant and was lawfully discharging an official duty at the time of the incident. Also, the trial court entered a finding that Appellant used or exhibited a deadly weapon. Appellant contends, however, that the State has presented no evidence, and alternately factually insufficient evidence, showing that Appellant threatened Bennett with imminent bodily harm. He argues that the evidence shows that the shotgun was not pointed in the direction of Bennett and that there were no shotgun pellet marks on Bennett's vehicle. It is true that there is some evidence that at times during the standoff Appellant held the gun at "parade rest" pointing it up into the air and that at times he held it down pointing it into the ground. Also, a subsequent investigation of the incident revealed no shotgun pellet marks on

Bennett's vehicle. However, the record contains ample evidence that Appellant threatened Bennett with bodily harm. At Bracher's home, Appellant stated that he "would shoot them too" referring to the police who had been called. At the scene of the incident, Appellant, armed with a shotgun with a sawed-off stock and shortened gun barrel, walked out of a wooded area towards Bennett. He did not comply with official instructions to put down his weapon and lie on the ground. Rather, he fired his shotgun at the officer twice. Officers Betterton and Daniels both testified that when Appellant fired the shotgun, it was pointed in the direction of Bennett. Moreover, the jury had before it some evidence that when Appellant fired at Bennett, he simply missed. A forensics expert explained that the short, 19 inch barrel of the shotgun reduced the effectiveness of the aim and that the spread of the 8 shot shell at 60 feet would only be from 20 to 40 inches in diameter. We also note that the evidence showed that Appellant had been drinking immediately prior to the incident. Furthermore, Bennett testified that he was in fear of bodily injury because of Appellant's conduct with the shotgun.

Appellant also contends that there was no evidence proving that Appellant knew that Bennett was a public servant. Again, the record reveals the contrary. All three officers at the scene were wearing uniforms and badges of office. Each was driving marked patrol vehicles and had pointed his spotlight and takedown lights on Appellant. The officers identified themselves to Appellant by loudspeakers and instructed him to drop his weapon and get on the ground. The evidence showed that Appellant and Bennett had personally known each other since high school days and that Bennett reminded Appellant over the loudspeaker that he was a constable.

We have reviewed the evidence in the light most favorable to the prosecution, and conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Furthermore, we have reviewed all of the evidence impartially and conclude that the jury verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Thus, the evidence is legally and factually sufficient. Appellant's issues three and four are overruled.

### APPELLANT'S MEMBERSHIP IN THE REPUBLIC OF TEXAS

In issue one, Appellant asserts that the court abused its discretion by allowing testimony that Appellant was a member of the Republic of Texas and testimony relative to the organization's reputation. During the punishment phase of the trial, Brasher testified, over Appellant's objection, that Appellant was a member of the Republic of Texas organization. The State then presented two witnesses who gave testimony as to the reputation of the Republic of Texas, again over the objection of Appellant. Anderson County Deputy Sheriff Greg Taylor testified that the Republic of Texas had a reputation as being a violent, anti-government organization intent upon overthrowing the government. He stated that it does not recognize the government of the State of Texas or the federal government. He testified that he gained this knowledge from his experience in law enforcement and through working with law enforcement agencies such as the Bureau of Alcohol, Tobacco, and Firearms, and the Texas Department of Public Safety's intelligence department. Texas Ranger Steve Foster similarly testified that the Republic of Texas had a reputation as an anti-government organization that stockpiled weapons, ammunition, food and water with the goal of overtaking and reclaiming the State of Texas.

Appellant contends that the introduction of this evidence was prohibited by the First Amendment of the U.S. Constitution which protects an individual's right to join groups and associate with others holding similar beliefs. He asserts that in sentencing, it is constitutionally

forbidden to consider any evidence concerning such beliefs and activities. It is true that the First Amendment protects an individual's right to join groups and associate with others holding similar beliefs. *Dawson v. Delaware,* 503 U.S. 159, 163, 112 S.Ct. 1093, 1096, 117 L.Ed.2d 309 (1992). However, the constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing merely because those beliefs and associations are protected by the First Amendment. *Id.* at 163–67, 112 S.Ct. at 1097–98. Such evidence may be admissible if it is shown to be relevant to the issues involved in the case. *Id.* Thus, the admission of such evidence does not *per se* violate the First Amendment.

■ Alternatively, Appellant argues that even if such evidence was admissible, the State failed to show its relevance. We disagree. The jury is concerned at the punishment phase hearing with evaluating a defendant's background and character independent of the commission of the crime on trial. *Sparkman v. State,* 580 S.W.2d 358, 360 (Tex.Crim.App. [Panel Op.] 1979); *Ybarra v. State,* 775 S.W.2d 409, 411 (Tex.App.—Waco 1989, no pet.). In following this view, the Texas Code of Criminal Procedure provides, in pertinent part, as follows:

. . .

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried. . . .

Tex.Crim. Proc.Code Ann. art. 37.07, § 3(a) (Vernon Supp.2000).

■ Moreover, the Texas Court of Criminal Appeals has recognized that where the defendant is charged with an act of violence, as in the instant case, membership in an organization with a reputation for violent activities is relevant evidence because it relates to his character and is therefore admissible. *Beasley v. State,* 902 S.W.2d 452, 456 (Tex.Crim.App.1995); *Anderson v. State,* 901 S.W.2d 946, 950 (Tex.Crim.App.1995). The State argues that, although the organizations of which the defendants were members in these two cases were "gangs," the principles laid down in *Beasley* and *Anderson* are applicable here. We agree. If the defendant's membership in an organization and the organization's reputation give the jury valuable information regarding the character of the defendant, such information should be allowed into evidence. *Ybarra,* 775 S.W.2d at 411. As Judge Mansfield pointed out in his concurring opinion in *Anderson,* "[i]t is beyond dispute that evidence of an individual's membership in the Boy Scouts, Rotary Club, or the Shriners is admissible at the punishment stage as evidence of good character. A plain reading of Article 37.07 leads to the conclusion that membership in organizations dedicated primarily to illegal aims . . . is admissible at punishment as evidence of bad character." *Anderson,* 901 S.W.2d at 952 (Mansfield, J., concurring). Thus, evidence of a defendant's membership in an organization and that organization's activities is admissible because it is relevant to the issue of a defendant's character.

■ In order to prove the relevance of a defendant's membership in an organization or group, the State must show (1) proof of the group's violent and illegal activities, and (2) the defendant's membership in the organization. *Mason v. State,* 905 S.W.2d 570, 577 (Tex.Crim.App.1995). In the instant case, the State has presented both. Appellant's former girlfriend, Brasher, testified that he was a member of that Republic of Texas, and Appellant admitted during his testimony that he had been a member of that organization. Moreover, two law enforcement officers testified that the organization had a reputation for violent and illegal activities.

They stated that it was an anti-government organization intent on overthrowing the government and which stockpiled weapons, ammunition, food, and water for that purpose.

■ Appellant also argues that under Texas Rule of Evidence 403, the prejudicial effect of the evidence of membership greatly outweighed its probative value. Because the trial court did not accept that argument, we may presume that the court did a rule 403 balancing test, which need not be announced from the record. *Nolen v. State*, 872 S.W.2d 807, 812 (Tex.App.— Fort Worth 1994, pet. denied). "Almost every piece of evidence presented at trial can be said to be prejudicial to one side or the other. Only evidence that is *unfairly* prejudicial must be excluded under Rule 403." *Miller v. State*, 2 S.W.3d 475, 482 (Tex.App.—Tyler 1999, no pet.). The State presented evidence that Appellant engaged in violent activity by carrying the loaded shotgun and pistol and shooting toward one of the officers. Under these circumstances, it was not unfair to admit evidence that he was also a member of an organization that stockpiles weapons for violent purposes. For these reasons, we hold that the trial court did not abuse its discretion, and thus, did not err in admitting into evidence Appellant's membership in the Republic of Texas and the reputation of that organization. Issue one is overruled.

### MOTION FOR MISTRIAL

■ In issue two, Appellant asserts that the trial court abused its discretion in denying his Motion for Mistrial because unfairly prejudicial evidence was presented before the jury. Before the punishment phase of the trial, Ranger Foster testified, outside the presence of the jury, that he had spent eleven or twelve days at Fort Davis on the ordeal involving the Republic of Texas at that location. The judge announced that he was going to admit evidence that Appellant was a member of the Republic of Texas, as well as

evidence as to its activities generally. However, the judge also announced that he did not want the attorneys to go into specific instances of the organization's conduct, presumably such as "Fort Davis." Later, during the district attorney's direct examination of Ranger Foster before the jury, the following testimony took place:

Q. All right. Ranger, can you generally describe for us the activities of the organization known as the Republic of Texas?

A. It's my belief that the Republic of Texas is an organization whose design is to overtake the state of Texas, to make it a sovereign state on its own.

Q. All right. And in order to do that, generally, what activities do they undertake?

A. They usually have organizational meetings, for instance the Fort Davis

. . .

Mr. Hicks [defense attorney]: Your Honor, I'm going to object. That's outside your parameters.

■ The trial judge sustained the objection, and at the request of Appellant, instructed the jury to disregard the statement. Although Appellant's point could be dismissed for inadequate briefing under Tex.R.App. P. 38.1(h), we will address his point in the interest of justice. Whenever a trial court instructs the jury to disregard an improper comment, it is presumed that the jury will follow the court's instruction unless the remark or comment was so prejudicial or extreme that the instruction was incapable of removing the harm. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Calderon v. State*, 847 S.W.2d 377, 380 (Tex.App.—El Paso 1993, pet. ref'd). Foster's comment referred only to the location of an unspecified incident. He provided no details as to the organization's activities at Fort Davis. Accordingly, we conclude that the complained of testimony was not so prejudicial or extreme that the instruction

was incapable of removing any harm. We overrule issue two.

### DEADLY WEAPON FINDING

 In issue five, Appellant asserts that the trial court erred in entering an affirmative finding in the judgment that Appellant used or exhibited a deadly weapon during the commission of the offense. He contends that since the jury, which was the trier of fact, did not make an affirmative finding that he used or exhibited a deadly weapon, the judge had no authority to make such a finding. The existence of such an affirmative finding affects Appellant's eligibility for community supervision and parole, and therefore, he seeks reformation of the judgment. The State contends that in light of the indictment, jury charge, and testimony, it was appropriate as a matter of law for the trial court to enter the affirmative finding because the shotgun used was a deadly weapon *per se.* Thus, the question is whether the trial judge was authorized under the circumstances of this case to enter an affirmative finding that Appellant used or exhibited a deadly weapon.

Where the jury is the trier of fact, the trial court may properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense if the weapon pleaded is *per se* a deadly weapon or a firearm. *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985). A firearm is by definition a deadly weapon. TEX. PEN.CODE ANN. § 1.07(17)(A) (Vernon 1994). A shotgun is a firearm and thus a deadly weapon. *Garcia v. State*, 819 S.W.2d 634, 636 (Tex. App.—Corpus Christi 1991, no pet.). In the instant case, the indictment alleged that Appellant "... did then and there use and exhibit a deadly weapon, to wit: a firearm ..." The jury charge defines a deadly weapon as a firearm. The jury charge also instructs the jury that "a person commits the offense of aggravated assault ... if he ... commits the offense of assault ... and he uses or exhibits a deadly weapon during the commission of the assault." The jury found the Appellant "guilty of the offense of aggravated assault on a public servant." Thus, the jury necessarily found that Appellant used a firearm, a deadly weapon, as alleged in the indictment. Under these circumstances, we hold that the trial court was authorized to enter an affirmative finding that Appellant used or exhibited a deadly weapon. Issue five is overruled.

The judgment of the trial court is *affirmed.*