COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

JARROD
DURAN,                                               )                    No. 
08-01-00109-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       243rd District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of El Paso County, Texas

                                                                              )

Appellee.                           )                        (TC# 970D03833)

 

O
P I N I O N

 

Jarrod
Duran appeals his convictions for aggravated assault and deadly conduct.  A jury found Appellant guilty of aggravated
assault (Count II) and the lesser-included offense of deadly conduct (Counts
III through VIII).  With respect to Count
II, the jury assessed punishment at a fine of $10,000 and imprisonment for a
term of eight years.  With respect to
Counts III through VIII, the jury assessed punishment at a fine of $1,000 and
confinement in the county jail for one year. 
We affirm.

FACTUAL SUMMARY








In
April 1997, Appellant traveled to El Paso from Trinidad, Colorado to help his
brother move into their father=s
home.  On April 22, Appellant went to the
residence of Deborah Connelly, Francis Connelly, and their son Francis Pearl
Connelly (Pearl).[1]  He had coffee and smoked two marihuana
cigarettes with Francis and Pearl.  Although
Pearl and his father had no unusual reaction, Appellant began feeling strange
and feared that he had been Adrugged@ and hypnotized.  He left suddenly and ran to his father=s house which was a few blocks
away.  Because he had left their house in
Athe wrong shape of mind,@ Deborah and Pearl followed Appellant
to check on him.  Appellant demanded that
they leave.  As they walked away from the
house, Appellant shot Deborah in the shoulder with an SKS Chinese model assault
rifle.  They got in the car, but before
they could get out of the driveway, a second shot came through the windshield
and struck Deborah in the opposite shoulder. 
The Connellys drove home and called an
ambulance.

The
El Paso County Sheriff=s
Department SWAT team and the Socorro Police Department also responded to the
call.  Appellant barricaded himself in
the residence and would not respond to the efforts of law enforcement
negotiators to communicate with him. 
Consequently, the SWAT commander determined that they would enter the
house forcibly in order to arrest Appellant. 
As six members of the SWAT team entered the residence to effect the
arrest, Appellant fired his rifle.  One
of those officers heard the bullets strike the ceiling above him and another
officer saw a bullet hole appear in the wall next to him.  The SWAT team returned fire and followed
Appellant into the kitchen where they disarmed him of the SKS assault rifle and
took him into custody.  During a
subsequent search, they found another assault rifle, other weapons, and
ammunition.  Additionally, they found
drug paraphernalia and a large amount of currency under a furnace.








Appellant
testified at trial that he became paranoid after he smoked the marihuana.  He believed the Connellys
had Adrugged
him@ and Ahypnotized@ him. 
He retrieved the gun because he knew the Connellys
would be coming to get him.  He
repeatedly yelled at them to leave and fired warning shots.  He did not immediately know that he had hit
Deborah.  After the Connellys
got into the car, he saw them reaching for what he believed might be a weapon,
so he fired a shot into the vehicle.  At
that point, he realized he had shot Deborah. 
After the police arrived, Appellant told them he did not want any
problems and hid in the house.  He
claimed to have been asleep when the officers removed the screen door.  Frightened that they would harm him, he fired
warning shots into the ceiling.  He threw
down his weapon when the officers entered the house.

A
grand jury returned an eight count indictment against Appellant for the
attempted murder of Deborah Connelly (Count I), the aggravated assault of
Deborah Connelly (Count II), and the attempted capital murder of six members of
the SWAT team (Counts III through VIII). 
Because the jury found Appellant guilty of Count II, the State dismissed
Count I.  With respect to Counts III
through VIII, the jury found him guilty of the lesser-included offense of
deadly conduct.  

PUNISHMENT EVIDENCE

In
Issue One, Appellant argues that the trial court abused its discretion in
admitting Aextraneous
offense@ evidence
regarding a Colorado murder and the drug paraphernalia in Appellant=s residence.  He contends the evidence should have been
excluded because it is irrelevant and its probative value is outweighed by its
prejudicial impact.  Additionally, he
urges that the two witnesses were incompetent to testify about the prior bad
acts.

Testimony of Thomas Lucas








Prior
to trial, the State provided Appellant with written notice of its intent to
introduce evidence of several adjudicated and unadjudicated
extraneous offenses.  Pertinent to this
point of error, the State gave notice that A[o]n
or about January 28, 1993, in the County of Las Animas, Colorado, Defendant
committed or was implicated in the offense of Murder against Michael Zuniga by
shooting Michael Zuniga with a firearm, which offense was investigated by the
Las Animas County Sheriff=s
Department under case no. 93-012, and for which Defendant was never
adjudicated.@  Additionally, the State intended to introduce
evidence showing that A[o]n
or about July 23, 1999, in the County of Las Animas and State of Colorado,
Defendant committed the offenses of Manslaughter and Assault against Ben
Velasquez, was found guilty of Assault in the 3rd Degree on or about February
1, 2000, and sentenced on or about March 8, 2000 to serve 18 months.@[2]

During
the punishment phase, Sergeant Thomas Lucas of the Sheriff=s Department in Trinidad, Colorado
testified that he has known Appellant for approximately two years and is
familiar with his reputation in the community for being violent or peaceful and
law-abiding.  According to Lucas,
Appellant has a reputation for being violent. 
Further, Lucas is of the opinion that Appellant is not law-abiding.  In 1999, Lucas investigated three related
assaults involving Appellant.  Appellant
and his girlfriend were fighting in a storeroom of a tavern in Trinidad when
Kristine Kirsch, Ben Velasquez, and Paul Williams attempted to intervene.  Appellant became angry at Kirsch and
attempted to attack her.  When Velasquez
tried to protect Kirsch, Appellant shoved Velasquez, who fell and struck his
head on a metal door.  Appellant later
told the officers that he shoved Williams but did not strike Velasquez.  Velasquez subsequently died of his
injuries.  A jury convicted Appellant of
manslaughter but the case was reversed on appeal and is currently awaiting
retrial.  








During
cross-examination, Appellant=s
counsel attempted to show that Lucas did not have a sufficient basis for his
testimony regarding Appellant=s
reputation for being violent.  When Lucas
stated that his opinion was based upon discussion with other police officers
and Appellant=s arrest
record, Appellant questioned him about some of the prior arrests, including the
assault of his girlfriend and Velasquez. 
On re-direct, the State elicited additional testimony regarding
Appellant=s arrest
record.  Finally, the prosecutor asked
Lucas whether he knew about Appellant=s
Ainvolvement in the murder of Michael
Zuniga, if anything?@  Lucas replied that he knew only that
Appellant drove Michael Zuniga to the residence of Rick June, who subsequently
killed Zuniga.  He explained that
Appellant was never charged with that murder. 
Appellant objected to the testimony and the court conducted a hearing
outside the presence of the jury.  During
this hearing, Lucas did not provide any other details of the offense or
Appellant=s
purported involvement in it.  Appellant argued
that the State had not established a link between Appellant and the offense,
and therefore, the evidence lacked relevance and was more prejudicial than
probative.  The prosecutor initially
responded by stating that Appellant was implicated in the shooting as a party
by having driven Zuniga to the residence. 
Later, however, the prosecutor explained to the court that the evidence
was relevant to Appellant=s
character because Athis guy
is around people who kill and he, himself, tries to kill.@ 
The trial court overruled Appellant=s
objections and admitted the testimony.  

Testimony of James Reuter

Detective
James Reuter of the El Paso County Sheriff=s
Department testified over Appellant=s
objections about drug paraphernalia found in the residence where Appellant
barricaded himself.  According to Reuter,
a large amount of currency was found under the house=s
furnace.  Additionally, they found a
cellophane baggie containing a white powdery substance and a bent Coca-Cola can
with a spoon.  These items are commonly
associated with drug usage.  The Coke can
also had a white powdery substance inside of it but
the officers did not test it to determine whether it was a controlled
substance.  








Standard of Review

A
trial court has broad discretion in determining the admissibility of evidence
presented at the punishment phase of trial. 
Davis v. State, 68 S.W.3d 273, 282 (Tex.App.--Dallas 2002, pet. ref=d);
Moreno v. State, 1 S.W.3d 846, 861 (Tex.App.-‑Corpus
Christi 1999, pet. ref=d).  Article 37.07 of the Code of Criminal
Procedure authorizes the trial court to admit evidence relating to any matter
deemed relevant to sentencing, including but not limited to:

[T]he prior criminal
record of the defendant, his general reputation, his character, an opinion
regarding his character, the circumstances of the offense for which he is being
tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any
other evidence of an extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant or for
which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act.

 

See Tex.Code Crim.Proc.Ann. art.
37.07, ' 3(a)(1)(Vernon Supp. 2003).

 








At
the punishment phase, relevant evidence is that which assists the fact finder
in determining the appropriate sentence given the particular defendant in the
circumstances presented.  Rogers v. State, 991 S.W.2d 263, 265 (Tex.Crim.App.
1999); Davis, 68 S.W.3d at 282-83.  Relevant evidence is not limited to evidence
of other crimes or bad acts nor is it limited to the circumstances of the
offense.  Evidence of the defendant=s conduct, background, and character
may be admissible even if it does not constitute an extraneous offense or bad
act.  Thompson v. State, 33 S.W.3d
847, 853 (Tex.App.--Tyler 2000, no pet.); Henderson
v. State, 29 S.W.3d 616, 626 (Tex.App.--Houston
[1st Dist.] 2000, pet. ref=d);
see Murphy v. State, 777 S.W.2d 44, 63 (Tex.Crim.App.
1988)(opinion on reh=g)(stating that possession of the
fullest information possible concerning the defendant=s
life and characteristics is highly relevant, if not essential, to selection of
an appropriate sentence).  Even relevant
evidence, however, may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex.R.Evid. 403; Davis, 68
S.W.3d at 283.  As used in Rule
403, Aunfair
prejudice@ means
the undue tendency of the evidence to suggest a decision on an improper
basis.  Rogers, 991
S.W.2d at 266.  We will not
disturb a trial court=s
determination regarding the admissibility of relevant evidence unless an abuse
of discretion has been shown.  See
Green v. State, 934 S.W.2d 92, 101‑02  (Tex.Crim.App.
1996).

Waiver

Appellant
first argues that the trial court abused its discretion because Lucas and
Reuter were not qualified to testify. 
The State responds that Appellant did not raise this objection in the
trial court, or if he did, it was abandoned. 
As a prerequisite to presenting a complaint for appellate review, the
record must show that the complaint was made to the trial court by a timely
request, objection, or motion, and that the trial court ruled upon it.  Tex.R.App.P.
33.1(a)(1) and (2); Tucker v. State, 990 S.W.2d
261, 262 (Tex.Crim.App. 1999); Richardson v. State,
981 S.W.2d 453, 455 (Tex.App.‑-El Paso 1998,
pet. ref=d).

With
respect to Reuter=s
testimony, Appellant never objected on the basis that the witness was not
qualified or was not competent to testify about the drug paraphernalia.  Therefore, his objection is waived.

Appellant
initially objected to Lucas=s
testimony in the presence of the jury on the grounds of relevance and
prejudice.  The trial court then excused
the jury and Lucas from the courtroom. 
During the subsequent hearing, Appellant=s
counsel continued to argue that the evidence lacked relevance and was more
prejudicial than probative, but he also engaged in the following exchange with
the trial court:








[Appellant=s counsel]:  You never, haven=t
had an opportunity to cross examine him on this point, how do we know he has
personal knowledge that he even drove the vehicle?  I mean, that=s
still coming along here and when we get to what goes before the jury, Judge.

 

[Judge]:  I understand. 
Well, I mean, do you want me to question him?

 

.          .          .

 

[Appellant=s counsel]:  Well --

 

[Judge]:  Do you want me to question him outside the
presence of the jury then, or do you want --

 

[Appellant=s counsel]:  No, ma=am.  What I would
like to do is have the Court sustain my objection to the prejudicial tossing of
whatever it is there into the jury box there, and I want the Court to grant a
mistrial because that=s
-- my client can=t get a
fair trial, no matter -- you couldn=t give a curative instruction, don=t see pink elephants.  That=s
what they think about immediately. 
My client cannot get a fair trial as a matter of law  in this, under the facts and
circumstances of that prejudicial stuff coming in before them, Judge.  [Emphasis added].

 

By rejecting the
trial court=s offer
to determine the basis of Lucas=
knowledge outside of the presence of the jury, Appellant certainly created the
impression that he intended to abandon this objection.  Consequently, he has waived this
complaint.  See
Ramos v. State, 819 S.W.2d 939, 942 (Tex.App.--Corpus
Christi 1991, pet. ref=d).

Relevance








When
examining whether evidence is relevant under Article 37.07, section 3(a)(1), the definition of Arelevant
evidence@ found in
Rule of Evidence 401[3]
is not a Aperfect
fit.@  See Rogers, 991
S.W.2d at 265.  Sentencing
presents different issues than those found in the guilt/innocence phase because
the jury or judge chooses from a punishment range, rather than deciding whether
a defendant is guilty.  Id.  Admissibility of evidence at the punishment
phase of a non‑capital felony offense is a function of policy rather than
relevancy because, by and large, there are no discrete factual issues at the
punishment stage.  Rogers,
991 S.W.2d at 265; Miller‑El v. State, 782 S.W.2d 892, 895 (Tex.Crim.App. 1990). 
There are simply no distinct facts of consequence that proffered
evidence can be said to make more or less likely to exist.  Rogers, 991 S.W.2d
at 265; Miller‑El, 782 S.W.2d at 895‑96.  Rather, deciding what punishment to assess is
a normative process, not intrinsically fact bound.  Rogers, 991 S.W.2d
at 265; Miller‑El, 782 S.W.2d at 896.  Determining what is relevant should be a
question of what is helpful to the jury in determining the appropriate sentence
for a particular defendant in a particular case.  Rogers, 991 S.W.2d
at 265.

Appellant
argues that the evidence is irrelevant because the State failed to demonstrate
beyond a reasonable doubt that he committed the extraneous offenses.  The State responds that it did not offer the
challenged testimony for the purpose of showing that Appellant committed the
murder in Colorado or that he possessed drugs  inside of his father=s home. 
Instead, it sought to provide the jury with information concerning the
circumstances of the offense and Appellant=s
character as reflected by his association with people who are involved with
weapons and murder.  We will first
consider whether the evidence is relevant as character evidence.








By
its enactment of Article 37.07, section 3(a)(1), the
Legislature has determined that character evidence is relevant to the issue of
punishment.  We must decide whether
evidence showing a bad act committed by an associate of the defendant is
relevant to the defendant=s
character.  Courts in our state have
recognized that where the defendant is charged with an act of violence, membership
in an organization with a reputation for violent activities is relevant because
it relates to his character, and is therefore admissible during the punishment
phase.  See e.g.,
Beasley v. State, 902 S.W.2d 452, 456 (Tex.Crim.App.
1995); Anderson v. State, 901 S.W.2d 946, 950 (Tex.Crim.App.
1995); Thompson, 33 S.W.3d at 853; Ybarra v. State, 775 S.W.2d
409, 411 (Tex.App.--Waco 1989, no pet.).  It is not necessary for the State to link the
accused to the bad acts or misconduct generally engaged in by the organization=s members.  Beasley, 902 S.W.2d
at 457.  In order for such
evidence to be relevant character evidence, the State must establish a
sufficient link between the defendant and the organization by introducing proof
of his membership.  See Mason v. State,
905 S.W.2d 570, 577 (Tex.Crim.App.
1995).  Additionally, it must offer proof
of the organization=s
activities and purposes so that the jury can determine whether the defendant=s membership is a positive or negative
character trait.  Anderson, 901 S.W.2d at 950.  We
conclude that a similar degree of connection must be shown here in order for
Appellant=s
association with Rick June to be relevant to Appellant=s
character.

The
evidence showed only that Appellant drove Zuniga to June=s
home and, at some unspecified point in time, June killed Zuniga.  There is no evidence of the nature of the
relationship between Appellant and June or Zuniga.  Given the lack of connection between
Appellant and June, Appellant=s
association with June does not reflect either positively or negatively upon his
character.  The State argues that the
evidence is relevant character evidence because Appellant was present when
people were killed with weapons.  We are
unable to address this contention, however, because there is no evidence that
Appellant was actually present when Zuniga was killed
nor is there any evidence that June killed Zuniga with a weapon.  Similarly, there is an insufficient
connection between Appellant and the drug paraphernalia found in the home of
Appellant=s
father.  Therefore, we find the evidence
pertaining to Zuniga=s
murder and the drugs found at the crime scene irrelevant to Appellant=s character and inadmissible under this
theory.








The
State also argues that this same evidence is relevant to show the circumstances
of the offense.  We fail to perceive how
Appellant=s
relationship with June is a circumstance of this offense.  Given the lack of detail regarding Appellant=s relationship with June or his
connection with the murder of Zuniga, we cannot conclude that the events in
Colorado somehow reflect upon the circumstances of this offense.  With respect to the drug paraphernalia found
in the home of Appellant=s
father, there is substantial evidence that Appellant uses illegal drugs and
associates with people who engage in the same conduct.  Therefore, we find that this evidence is
admissible as a circumstance of the offense. 
But this does not end our inquiry.

Rule 403

The
Rules of Evidence prohibit the admission of relevant evidence where its
probative value is substantially outweighed by the danger of unfair
prejudice.  Tex.R.Evid. 403.  There was substantial evidence that Appellant
uses illegal drugs.  Consequently, the
probative value of this evidence would not have been substantially outweighed
by the danger of unfair prejudice.  

Harm Analysis








Having
determined that the trial court erred in admitting the evidence of Zuniga=s murder during the punishment phase,
we must proceed to a harm analysis. 
Because this is non‑constitutional error, the appropriate standard
is that found in Rule 44.2(b), which requires us to examine error in relation
to the entire proceeding and determine whether it had a substantial and
injurious effect or influence in determining the jury=s
verdict.  Tex.R.App.P. 44.2(b); King v. State, 953
S.W.2d 266, 271 (Tex.Crim.App. 1997), citing Kotteakos v. U.S., 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557
(1946)(discussing federal Aharmless
error@ rule
containing similar language); Richardson v. State, 981 S.W.2d 453, 457 (Tex.App.‑‑El Paso 1998, pet. ref=d). 
If the record fails to show that the error had such an impact, it cannot
be said to affect a substantial right, and therefore, we are mandated to
disregard the error.  Richardson, 981 S.W.2d at 457. 
Essentially, we must determine whether the error compromised the
fairness of Appellant=s
trial.

Appellant
contends that the evidence harmed him because the jury was permitted to
consider it even though the State failed to prove he committed the extraneous
offense beyond a reasonable doubt.  He
points to the jury=s
assessment of a prison sentence rather than community
supervision as evidence of harm.  The
charge instructed the jury to consider extraneous acts only if they were proven
beyond a reasonable doubt.  We are
required to presume that the jury followed this instruction.  See Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App.
1998).  During final argument, Appellant=s counsel stressed that the jury could
not consider this evidence unless it believed beyond a reasonable doubt that
Appellant had participated in the murder.  The State, on the other hand, never mentioned
Zuniga=s murder in
final argument.  Instead, the prosecutor
referred strictly to the facts of the instant case as justifying the maximum
punishment.  While the jury  assessed a prison sentence rather than
recommending community supervision, the facts are sufficiently egregious to
warrant the sentences imposed.  Further,
the jury heard additional evidence of several prior arrests, the assaults of
Appellant=s
girlfriend, Kirsch, and Velasquez, and Appellant=s
poor reputation in his community.  From
this evidence, the jury could have readily determined that Appellant was a poor
candidate for community supervision.  We
conclude that the evidence pertaining to Zuniga=s
murder did not have a substantial and injurious effect on the jury=s determination of punishment, and the
error must be disregarded.  Issue One is
overruled.

ADMISSION OF TRANSCRIPT








In
Issue Two, Appellant argues that the trial court abused its discretion in
admitting a portion of his testimony from the trial in Colorado because it is
hearsay.  The State responds that
Appellant waived his hearsay objection by failing to raise it in the trial
court.  We agree.  Appellant questioned only the relevance of
the testimony and made no hearsay objection. 
Therefore, his complaint on appeal is waived because it varies from the
objection made in the trial court.  See
Fuller v. State, 827 S.W.2d 919, 928 (Tex.Crim.App.
1992); Tex.R.App.P. 33.1.  Issue Two is overruled.  Having overruled both issues, we affirm the
judgment of the trial court.

 

 

December 19, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]  Deborah is
Pearl=s stepmother but she considered him a son since she
had raised him from a young age.





[2]  Appellant does
not challenge the admission of the evidence pertaining to the assault of
Velasquez.  We include it in this
discussion because it forms the context in which the challenged evidence was
admitted.





[3]  ARelevant evidence@ means
evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.  Tex.R.Evid. 401.