

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-372-CR

NICHOLAS TRAMMELL                                                APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

**Introduction**

Appellant Nicholas Trammell appeals his conviction for aggravated assault. In two points, he asserts that the trial court erred by excluding a self-defense instruction from the jury charge and by refusing to allow pro bono counsel to assist his court-appointed counsel at trial. We affirm.

## Background Facts

Around noon on September 30, 2006, appellant and his friend Everett Banks rode in appellant's white car to Enzifer Jordan's house to smoke marijuana and drink alcohol. Enzifer, who was barbequing, had drunk three or four beers that day and had also used methamphetamine. Everett became drunk, and he and Enzifer began to argue.[1] After the situation settled, Everett and appellant returned to appellant's car; however, because appellant said something to Enzifer, Enzifer followed them and kicked the car. Appellant began to get out of the car with a screwdriver in his hand; Enzifer responded by grabbing a knife that was on his grill.[2] Enzifer's neighbor yelled at him to calm down; appellant and Everett then left the scene without any physical contact having occurred between appellant and Enzifer.

That night at around 11 p.m., as Enzifer left his house to get a drink from Sonic, he noticed a white car with its headlights off parked on his street. Enzifer drove his car toward the white car, and he saw appellant sitting inside.

---

[1] Everett testified that the argument occurred because he interrupted Enzifer's drug deal.

[2] Enzifer related at trial that appellant did not reach for the screwdriver until Enzifer "made him feel threatened." He also admitted that he can be scary when he is angry. However, he testified that he did not own a gun at the time of the events relevant to this appeal; Everett's testimony corroborated this statement. Everett said that appellant did not have any weapon and that instead of a knife, Enzifer had a "little shovel or something."

2

Enzifer asked appellant what he was doing there; Enzifer then said, "Man, we can handle this and just fight or we can just go on our separate ways." Appellant asked Enzifer why he had kicked appellant's car; appellant then pulled out a sawed-off shotgun, pointed it through his open car window, and shot Enzifer as Enzifer sat in his own car. The shotgun pellets hit Enzifer's triceps and his chest. As appellant drove away, Enzifer put his car in reverse and returned to his house. Enizifer's friend, Casey Underwood (who was drinking alcohol at Enzifer's house for about an hour preceding the shooting)[3] called 911, and Enzifer's neighbor, Heather McDaniel, assisted Enzifer until the police arrived.

Fort Worth Police Department (FWPD) Officer Shawn Greene went to the scene, and he saw Enzifer's shotgun wounds[4] as Enzifer was lying on his back in his driveway. Enzifer, who was angry and was screaming, did not initially cooperate with Officer Greene's investigation. Medical personnel arrived at the scene, and they took Enzifer to a hospital.[5]

---

[3] Casey testified that Enzifer was not drinking alcohol or doing drugs during that time and that Enzifer was acting normally.

[4] Officer Greene testified that there were pellet holes through Enzifer's side and that his "entire triceps was completely gone, basically."

[5] Enzifer stayed in the hospital for four days, where he received treatment that included removing the shotgun pellets from his abdomen and heart.

3

Appellant went to his father's house, and he told his father, Jay Trammell, that he had shot someone. The next morning, Jay went to visit appellant's mother, Alena Schram, to tell her what had happened. With Jay's agreement, Alena called the police. Alena, Jay, appellant, and the shotgun were at Jay's house when the police arrived.[6] FWPD Officer Jeffery Brady took possession of the shotgun, which contained a spent shotgun shell casing; he also retrieved a full box of unused shells.

In February 2007, based on the shooting, a Tarrant County grand jury indicted appellant with aggravated assault. *See* Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2008).[7] Appellant certified his indigence, and he requested and received a court-appointed attorney.

In October 2007, after the parties filed various pretrial motions and other documents, the trial began. Before voir dire of the jury panel, the trial judge noticed another attorney sitting at the counsel table with appellant's appointed attorney (Lisa Hoobler), and the following exchange occurred:

---

[6] Alena and appellant's father are divorced; they live at different addresses.

[7] Aggravated assault is generally a second-degree felony with a punishment range of two to twenty years' confinement. *See* Tex. Penal Code Ann. § 12.33(a) (Vernon 2003), § 22.02(b).

4

THE COURT: And who is this at the table?

MS. HOOBLER: With the Court's permission, Alisha Johnson is volunteering as second chair, if I could, Your Honor.

THE COURT: Honestly, it's 1:45. I am simply appalled that you are waiting to this time to ask for co-counsel to sit with you. We've been here all day. I've been here since 9:00. You've been here since 9:00, you know --

MS. HOOBLER: May I tell you why I've made this mistake?

THE COURT: Yeah, I'd love to hear it.

MS. HOOBLER: If the Court will recall, the day that I had bronchitis, and we were set before and you had gave us a continuance for that, I had thought that I had brought it up then. We had prepared as far back as that time, and I thought I had asked you that day. It was my intention, and it is my oversight, Your Honor.

THE COURT: Did you ask me that day?

MS. HOOBLER: I have no recollection, Your Honor. I thought in my mind that I had. It was on my list of things. She and I had talked about asking you in advance.

THE COURT: Well, she doesn't have standing to ask for anything.

MS. HOOBLER: I just mean to tell you that I knew that I meant to do that, and if I've left it out, it wasn't -- I wasn't trying to get around you or anything else. I just have made a simple mistake.

THE COURT: I'm not feeling personally affronted. As the Court, you don't get to wait to the day of trial, the minute of trial to ask for changes like co-counsel. You just don't. That ain't how it works. You're appointed. You don't get to do that. You don't

5

get to make those decisions. The Court makes decisions about counsel.

MS. HOOBLER:    Yes, Your Honor.

THE COURT:    Has she had any contact with your client?

MS. HOOBLER:    Yes, Your Honor.

THE COURT:    In what regard?

MS. HOOBLER:    Just a brief interview, and then she's helped me with my investigator and my preparation.

THE COURT:    And the name is what?

MS. JOHNSON:    Alisha Johnson.

THE COURT:    Are either of you board certified?

MS. JOHNSON:    No.

MS. HOOBLER:    No.

THE COURT:    Ms. Hoobler, how long have you been in practice?

MS. HOOBLER:    Eight years.

THE COURT:    Ms. Johnson?

MS. JOHNSON:    Thirteen years.

THE COURT:    I'm sorry?

MS. JOHNSON:    Thirteen years.

THE COURT:    And are you both on the wheel for this level of offense?

6

MS. HOOBLER:   I am, Your Honor.

THE COURT:     Ms. Johnson?

MS. JOHNSON:   No, I am not, Your Honor.

THE COURT:     Then you cannot sit at tables.[8]

As voir dire proceeded, the parties questioned the jury panel at length about self-defense issues. After the trial court empaneled the jury, appellant pled not guilty. The next morning, before the parties' opening statements, appellant's counsel asked the trial court to reconsider its ruling regarding Ms. Johnson's assistance:

MS. HOOBLER:   If I could just clarify, Your Honor, I'm not asking for [Ms. Johnson] to be appointed. I'm asking to let her participate as a second --

THE COURT:     But what is the difference --

MS. HOOBLER:   She --

THE COURT:     No, let me finish. What's the difference with her -- because you've said you're not asking for her to be appointed. . . . But for her to sit there and participate, she may as well be appointed. Then what I've really done, instead of giving him, you know, you and a very qualified attorney, I've given him you, and

---

[8] Although she was prohibited from sitting at the counsel table, Ms. Johnson continued to observe the trial proceedings. Moreover, the trial judge specifically told appellant's appointed counsel that although Ms. Johnson could not "be at tables," Ms. Johnson was not prohibited from "*sitting in here [and] talking to you*." [Emphasis added.]

then for free he's gotten somebody who is not qualified to handle his case.

MS. HOOBLER: Well, I would just say, Your Honor, it's very common for more junior lawyers, as far as experience goes in trial, to sit with more experienced lawyers to gain experience and to learn how to be effective counsel themselves. The State has two lawyers. And just for the purposes of the record, Your Honor, I just need to object under the Sixth Amendment. He would be entitled to any kind of help that would volunteer that wouldn't affect from the budget of the county. And I do understand the Court's point and I've not taken as argument yet just to fulfill what I think is my duty of the record.

THE COURT: Well, and I understand your objection, and I want you to understand that I'm not talking about the budget of the county. I'm talking about the requirement that the Court have attorneys sitting here. I mean, I can't allow you as a court-appointed attorney. If you were hired and you wanted to call somebody else, then that's y'all's business. But you're appointed, and as an appointed attorney, I honestly do not think, given the state of, what is it, 26.05 in the court-appointed counsel rules, that I can have you, under the felony guidelines promulgated by our district judges, pursuant to that statute, that I can allow you to have an attorney sitting with you that is not qualified to handle this case.

After both parties presented evidence and then rested, the parties submitted arguments before the trial court on whether the jury charge should contain a self-defense instruction. The trial court refused to include such an instruction, reasoning that it did not "see anything except verbal provocation and a man who brought a prohibited weapon to a redress of grievances, which

8

specifically is not self-defense."[9] During closing arguments, the State emphasized that the jury charge did not contain a self-defense instruction, but appellant still alluded to his self-defense theory. The jury briefly deliberated, and they found appellant guilty. After hearing evidence regarding appellant's punishment, the jury assessed six years' confinement. Appellant timely filed his notice of this appeal.

## Self-Defense Instruction

In his first point, appellant asserts that the trial court erred by refusing to include a jury charge instruction about self-defense. Appellant specifically objected to the trial court's refusal in this regard.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred; if so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

A defendant has the burden of producing sufficient evidence at trial that raises the issue of self-defense to have that issue submitted to the jury. *See Davis v. State*, 268 S.W.3d 683, 693 (Tex. App.—Fort Worth 2008, pet.

---

[9] Appellant also requested an instruction on necessity. The trial court denied the inclusion of this instruction as well, but no issue on appeal has been raised as to that denial.

9

ref'd); *Hill v. State*, 99 S.W.3d 248, 250–51 (Tex. App.—Fort Worth 2003, pet. ref'd) (explaining that if there is evidence supporting a self-defense theory, an instruction to the jury is required whether such "evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense").  If the evidence, as viewed in the light most favorable to the defendant, does not support self-defense, an instruction is not required.  *See Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Davis*, 268 S.W.3d at 693.

Use of deadly force against another in self-defense is justified only when the actor reasonably believes such force is immediately necessary to (1) protect the actor or a third person from the other's use or attempted use of deadly force, or (2) prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.[10]  Tex. Penal Code Ann. § 9.32(a) (Vernon Supp. 2008); *see id.* § 9.01(3) (Vernon Supp. 2008) (defining "deadly force" as force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury"); *Schiffert v. State*, 257 S.W.3d 6, 14 (Tex. App.—Fort Worth 2008, pet. dism'd).  Force is

---

[10] Appellant has not asserted that Enzifer intended to commit any of these offenses.

not justified in response to verbal provocation alone. Tex. Penal Code Ann. § 9.31(b)(1) (Vernon Supp. 2008).

Appellant used deadly force when he shot Enzifer with a shotgun because a shotgun is capable of causing death or serious bodily injury. *See Thompson v. State*, 33 S.W.3d 847, 855 (Tex. App.—Tyler 2000, pet. ref'd). To be entitled to a self-defense instruction, appellant was therefore required to present some evidence at trial demonstrating his reasonable belief that shooting the shotgun was immediately necessary to protect him or a third person from Enzifer's use or attempted use of deadly force. *See* Tex. Penal Code Ann. § 9.32(a)(2)(A). He did not do so.

Appellant could not have reasonably believed at the time of the shooting that his conduct was immediately necessary because, although Enzifer pointed a knife at appellant several hours before the shooting, Enzifer remained in his car while appellant shot him, never showed appellant any weapon, and never indicated that he intended to cause appellant death or serious bodily injury. *See Hernandez v. State*, No. 04-05-00078-CR, 2006 WL 397922, at *4 (Tex. App.—San Antonio Feb. 22, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that a wife who had been beaten by her husband was not entitled to a defensive instruction upon shooting her husband because there was "no evidence showing the immediacy of any threat posed by the victim");

11

*Smith v. State*, 638 S.W.2d 208, 210 (Tex. App.—Fort Worth 1982, no pet.) (affirming the trial court's refusal to include a self-defense instruction because, although the victim struck the defendant in the same encounter in which the shooting occurred and had threatened the defendant on previous occasions, use of "deadly force could not have reasonably been believed to be *immediately necessary* to protect [the defendant] against [the victim]"). Also, even if appellant thought that Enzifer intended to cause such harm, appellant could have simply driven away from the scene; shooting the gun was not an immediately necessary response.[11] *See Davis*, 268 S.W.3d at 698 (noting that the defendant could have "simply left the apartment" to avoid a supposed attack). Next, while Enzifer's statement made while he was in his car, as described above, could be viewed as an expression of his desire to fight appellant, his words alone did not justify appellant's shooting the shotgun. *See* Tex. Penal Code Ann. § 9.31(b)(1); *Lane v. State*, 957 S.W.2d 584, 586 (Tex. App.—Dallas 1997, pet. ref'd). Finally, evidence of events that occurred after the shooting cannot support appellant's requested self-defense instruction

---

[11] Because the shooting occurred in 2006, appellant had a statutory duty to retreat before using deadly force. *See Davis*, 268 S.W.3d at 697 & n.3. In 2007, the legislature eliminated language regarding a duty to retreat from the deadly force self-defense statute, and it affirmatively provided that there is no duty to retreat when deadly force is otherwise justifiable. *See id.*; *see also* Tex. Penal Code Ann. § 9.32(c).

because such evidence does not relate to appellant's alleged belief that force was necessary at the time he acted. *See Juarez v. State*, 886 S.W.2d 511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

For all of these reasons, we conclude and hold that the evidence at trial did not justify a self-defense instruction and that the trial court did not err by denying the instruction. Thus, we overrule appellant's first point.

### Denial of Pro Bono Counsel

In his second point, based on the colloquies set forth above, appellant contends that the trial court erred by refusing to allow pro bono counsel to assist his court-appointed counsel at trial. He argues that the trial court denied him a right to the counsel of his choice.[12] For this proposition, he heavily relies

---

[12] He specifically asserts violations of his federal constitutional rights and his state constitutional and statutory rights, contending that the trial court had "no valid reason for disallowing said counsel in that no continuance or appointed attorney fees were requested." *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 2005). However, his brief contains only argument related to his federal Sixth Amendment claim. Because he has not briefed his claims related to the other constitutional and statutory provisions beyond generally citing to those provisions, because his sole complaint at trial concerned the Sixth Amendment, and because courts have held that these provisions provide substantially the same rights as the Sixth Amendment, we will focus only on appellant's Sixth Amendment claim. *See Hull v. State*, 699 S.W.2d 220, 221 (Tex. Crim. App. 1985); *Andrade v. State*, 246 S.W.3d 217, 223 n.1 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *King v. State*, 189 S.W.3d 347, 361 (Tex. App.—Fort Worth 2006, no pet.); *see also* Tex. R. App. P. 38.1(i).

on the United States Supreme Court's holding in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–52, 126 S. Ct. 2557, 2563–66 (2006).

In *Gonzalez-Lopez*, the court considered whether "a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction." *Id.* at 142, 126 S. Ct. at 2560. The federal trial court had denied pro hac vice admission to the defendant's desired out-of-state retained counsel, and it had refused to allow that counsel to have contact with defendant's local counsel during his trial.[13] *Id.* at 142–43, 126 S. Ct. at 2560. After a jury convicted the defendant, he argued that the trial court had denied his Sixth Amendment right to "paid counsel of his choosing." *Id.* at 143–44, 126 S. Ct. at 2560–61.

In analyzing Gonzalez-Lopez's argument, the Supreme Court noted that it had previously held that "a defendant *who does not require appointed counsel* [has the right] to choose who will represent him." *Id.* at 144, 126 S. Ct. at 2561 (emphasis added). The court then reversed Gonzalez-Lopez's conviction because it decided that the trial court violated Gonzalez-Lopez's right to counsel of his choice and that such a violation does not require any connected showing

---

[13] Specifically, the trial court required a United States Marshal to sit between appellant's local counsel and his desired out-of-state counsel. *Gonzalez-Lopez*, 548 U.S. at 143, 126 S. Ct. at 2560.

of harm because it is a structural error. *See id.* at 144–52, 126 S. Ct. at 2561–66. However, the court limited its holding as pertaining to defendants with appointed counsel, explaining, "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice . . . . [*T*]*he right to counsel of choice does not extend to defendants who require counsel to be appointed for them*." *Id.* at 151, 126 S. Ct. at 2565 (emphasis added); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S. Ct. 2646, 2652 (1989) (stating that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts"). Based on this limitation, we conclude that the holding in *Gonzalez-Lopez* does not support appellant's argument that although he had appointed counsel, he was also constitutionally entitled to pro bono counsel of his choice.

Similarly to the limitation expressed in *Gonzalez-Lopez*, Texas courts have specifically held that an indigent defendant does not have a right to the counsel of his own choosing. *See Long v. State*, 137 S.W.3d 726, 735 (Tex. App.—Waco 2004, pet. ref'd); *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (indicating that an indigent

15

defendant "must accept the counsel appointed by the court"); *see also United States v. Hughey*, 147 F.3d 423, 428 (5th Cir. 1998) (relating that the "Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant's fair or reasonable opportunity to obtain counsel of the defendant's choice"), *cert. denied*, 525 U.S. 1030 (1998). Also, Texas cases expressing that a defendant's Sixth Amendment rights are protected when he has effective assistance from either retained or appointed counsel weigh against his position. *See Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982) (stating that once "the court has appointed an attorney to represent the indigent defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments"); *Montemayor v. State*, 55 S.W.3d 78, 88–89 (Tex. App.—Austin 2001, pet. ref'd) (holding that the trial court properly removed the defendant's appointed counsel when the defendant retained other counsel); *Ex parte Williams*, 870 S.W.2d 343, 348 (Tex. App.—Fort Worth 1994, pet. ref'd) (reciting that a defendant "has the right to have counsel appointed if retained counsel cannot be obtained") (quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)); *Hazelwood v. State*, 838 S.W.2d 647, 649 (Tex. App.—Corpus Christi 1992, no pet.) (explaining that an accused has the right "to be represented by *either* retained or court-appointed counsel) (emphasis added).

16

Finally, once a defendant has been found indigent and has appointed counsel whose services are provided by the state or county, it would seem counter productive for him to then represent to the court that he has also managed to secure pro bono counsel. The code of criminal procedure provides that only an indigent defendant, one that is not financially able to employ counsel, is entitled to appointment of counsel. Tex. Code Crim. Proc. Ann. art. 1.051(b), (c) (Vernon Supp. 2008).

While we have not found any precedent directly addressing a defendant's right to pro bono assistance of counsel at trial when the trial court has appointed other counsel, we conclude and hold, based on the authority cited above,[14] that the trial court did not violate appellant's rights when it excluded his pro bono counsel from its proceedings.[15] Therefore, we overrule appellant's second point.

---

[14] We also believe that cases holding that a defendant is not entitled to "hybrid" representation of the defendant himself and the defendant's counsel, while not fully compatible with the facts of this case or the legal issues raised by appellant, are instructive as to our holding. *See Robinson v. State*, 240 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Fulbright v. State*, 41 S.W.3d 228, 235 (Tex. App.—Fort Worth 2001, pet. ref'd).

[15] We do not intend to hold that allowing pro bono counsel to assist appointed counsel is improper. We also do not hold, contrary to the dissent's implication otherwise, that the code of criminal procedure trumps constitutional rights. *See* dissenting op. at 1. We merely conclude that exclusion of Ms. Johnson as additional counsel did not violate such constitutional rights as asserted in this appeal.

17

**Conclusion**

Having overruled both of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

GARDNER, J. concurs without opinion.

PUBLISH

DELIVERED:  May 7, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-372-CR

NICHOLAS TRAMMELL                                                   APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

The majority holds that when a court-appointed attorney, on behalf of an indigent defendant, asks that volunteer counsel be allowed to participate in the trial without compensation, the Sixth Amendment right to counsel of the defendant's choice must give way to the "next lawyer up" rules of "the wheel." Because this constitutional protection is fundamental to due process, I cannot agree that it is trumped by article 26.04 of the code of criminal procedure. I therefore dissent from the majority opinion.

The United States Supreme Court has recognized that the right to select counsel of one's choice is considered the core meaning of the Sixth Amendment's guarantee of the right to counsel.[1] A trial court's erroneous deprivation of this right is structural error and not subject to harmless error analysis.[2] It has long been recognized that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."[3] Our sister court in Waco has held that a trial court who imposed its own local rule prohibiting a criminal defendant's retaining multiple attorneys, each to handle limited portions of the proceedings, "abrogate[d] the constitutional right of defendants to choose counsel . . . ."[4]

The issue here is whether an indigent defendant is entitled to the same right to counsel as a defendant who can retain as many lawyers as he deems necessary. The issue is not whether a defendant can demand appointment of

---

[1] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48, 126 S. Ct. 2557, 2563 (2006).

[2] *Id.* at 150, 152, 126 S. Ct. at 2564, 2566.

[3] *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25, 109 S. Ct. 2646, 2652 (1989).

[4] *Kozacki v. Knize*, 883 S.W.2d 760, 763 (Tex. App.—Waco 1994, orig. proceeding).

his chosen counsel, but whether a volunteer lawyer can assist appointed counsel pro bono.

The State argues that if Appellant has a volunteer attorney, he has retained counsel and is not indigent and, therefore, is not entitled to appointed counsel. There is no evidence that the additional attorney's act of volunteering to represent Appellant without compensation defeated the trial court's prior determination of indigence. Nor would the determination of indigence be defeated if appointed counsel had paid counsel out of her own funds to assist with Appellant's case.

The trial court did not base its refusal on the ground that allowing volunteer counsel to participate would defeat Appellant's indigent status, nor did the trial court base its refusal on the ground that allowing volunteer counsel would delay the trial or impede justice. Both lawyers were prepared to proceed with the trial. The only reason stated by the trial court for denying Appellant the assistance of volunteer counsel was that volunteer counsel was not on the wheel.

The trial court has shed light on a very real problem that trial courts in criminal cases must deal with daily. Trial courts are obligated to provide appointed counsel to indigent defendants as both a Sixth Amendment guarantee and a due process protection, but the legislature tells the trial courts how to do

3

that job.[5]  The trial court is allowed to match the attorney to the specific case or to the specific defendant only if the defendant is a non-English speaker or deaf.[6]  Otherwise, the trial court must give every lawyer a fair shot at the appointments by complying with the legislature's mandate that

> [a] court shall appoint an attorney from a public appointment list using a system of rotation, unless the court appoints an attorney under Subsection (f), (h), or (i).  The court shall appoint attorneys from among the next five names on the appointment list in the order in which the attorneys' names appear on the list, unless the court makes a finding of good cause on the record for appointing an attorney out of order.  An attorney who is not appointed in the order in which the attorney's name appears on the list shall remain next in order on the list.[7]

The system used to appoint lawyers must "ensure that appointments are allocated among qualified attorneys in a manner that is fair, neutral, and nondiscriminatory."[8]  The system does not recognize that a lawyer who meets the general qualifications for felony appointments may not be qualified to handle a specific kind of case.  Civil practitioners have long recognized that one size does not fit all.  A lawyer may have many years of experience handling employment discrimination cases but not have the expertise to handle a medical malpractice case.  Similarly, a lawyer may have successfully handled many

---

[5] *See* Tex. Code Crim. Proc. Ann. art. 26.04 (Vernon 2009).

[6] *Id.* art. 26.04(c).

[7] *Id.* art. 26.04(a).

[8] *Id.* art. 26.04(b)(6).

4

murder cases but not be confident to sit first chair in a case that depends on DNA experts. The trial court is in a better position to fit the lawyer to the case than is a legislative mandate that seeks to protect lawyers' access to court appointment fees.

Here, the trial judge believed that she could not allow volunteer counsel with thirteen years' experience to assist a court-appointed lawyer with only eight years' experience because the volunteer lawyer was not on the wheel. Although an indigent defendant has no right to insist that the trial court appoint a specific lawyer,[9] interpreting the statute to prohibit volunteer co-counsel defeats a defendant's Sixth Amendment right to counsel. The appointed lawyer did not ask the trial court to appoint the second lawyer; she did not ask to delay the trial.

The Texas Court of Criminal Appeals has addressed the issue of volunteer counsel in relation to a volunteer prosecutor.[10] The court held that the trial court had the discretion to allow "volunteer counsel to appear and assist the state in the prosecution where the prosecuting attorneys were not only present to conduct the prosecution but entirely able and well qualified to protect every

---

[9] *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977).

[10] *Loshe v. State*, 272 S.W.2d 517, 520 (Tex. Crim. App. 1954).

interest of the state."[11]   This discretion is limited when "appearance of volunteer counsel could and would operate to prejudice the rights of the accused or to lead the jury to believe that sentiment was so aroused against the accused as to cause counsel to volunteer to assist the state."[12]   In sum, whether to allow volunteer counsel is within the discretion of the trial court except when allowing or, I submit, denying the appearance of volunteer counsel negatively impacts the right of an accused to a fair trial.  The record is clear in the case before us that the State had two lawyers.  Two lawyers for the defense was not unreasonable.

Because Appellant's Sixth Amendment right to counsel was abridged by the trial court's refusal to allow volunteer counsel based solely on her absence from the wheel, I must respectfully dissent from the majority's holding that Appellant was not allowed the assistance of more experienced volunteer counsel.  Because the trial court's error is structural and therefore not subject to harmless error analysis,[13] I would reverse the trial court's judgment and remand this case to the trial court for a new trial.

---

[11]🔺 *Id.*

[12]🔺 *Id.*

[13]🔺 *See Gonzalez-Lopez*, 548 U.S. at 150, 152, 126 S. Ct. at 2564, 2566.

                                           LEE ANN DAUPHINOT
                                           JUSTICE

PUBLISH

DELIVERED:  May 7, 2009