# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00492-CV

**In the Matter of M. A. J.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-30,114, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The district court, sitting as a juvenile court, adjudicated M.A.J. delinquent after finding that he had committed the offense of assault. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2009). The juvenile court then transferred the case to Williamson County, where M.A.J. resided, for disposition.[1] M.A.J. appeals from the order adjudging him delinquent.[2] In a single point of error, M.A.J. asserts that the evidence is factually insufficient to show that he did not act in self-defense. We will affirm the order.

## BACKGROUND

The juvenile court heard evidence that, on February 8, 2009, M.A.J., a 15-year-old boy, punched S.K., a 16-year-old boy, in the mouth. The issue at trial was whether S.K. provoked M.A.J. and, if so, whether such provocation justified M.A.J.'s use of force.

---

[1] The order of disposition is not in the record before us.

[2] *See* Tex. Fam. Code Ann. § 56.01(c)(1)(A) (West Supp. 2009) (authorizing appeal from order adjudging juvenile delinquent).

S.K. testified that, on the day of the incident, he was visiting some of his friends, including his girlfriend, L.L., at an apartment complex when they walked past M.A.J., who was sitting in the courtyard of the complex with his friend, A.V.C. As they were walking past M.A.J., A.V.C. apparently told M.A.J. that S.K. said "F**k Blue."[3] S.K. testified that he did not say that. In fact, S.K. claimed that he did not remember saying anything to M.A.J. According to S.K., after A.V.C. told M.A.J. what S.K. had allegedly said, M.A.J. stood up, walked toward S.K., asked him if he had made the statement, and, before S.K. could respond, hit him in the mouth, causing S.K. to fall to the ground.

L.L. testified similarly about the incident, although she recalled that, before M.A.J. hit S.K., S.K. asked M.A.J., "Are you really going to believe what [A.V.C.] says?" After that, L.L. recalled, "[M.A.J.] just started hitting him." When asked "who threw the first punch," L.L. testified, "[M.A.J.]" L.L. denied that S.K. did anything to provoke M.A.J. L.L. also testified that, after M.A.J. hit S.K., A.V.C. admitted to M.A.J. that "she was just kidding" about what S.K. had said. M.A.J. then helped S.K. to his feet. L.L. took S.K. to her house, where L.L.'s mother called the police. According to one of the officers who responded to the call, S.K. "had a large laceration to his lip. It was actually filleted open. He was bleeding profusely." S.K. was transported to the hospital, where he was treated for his injuries.

A.V.C. also testified. She admitted that she had not heard S.K. say "F**k Blue" prior to telling M.A.J. that she had heard him say that, although she claimed that S.K. did say those words "like a second later." According to A.V.C., she "always plays around with [M.A.J.] like that

---

[3] "Blue" is a reference to the gang known as "Crips." According to the officer who arrested M.A.J., M.A.J. is a "self-proclaimed" member of that gang.

and he knows I don't mean it."  When asked "who threw the first punch" during the altercation, A.V.C. testified, "[M.A.J.]"  However, A.V.C. added that, before M.A.J. hit S.K., S.K. appeared to be in a fighting stance with his arms raised and his chest puffed up, "[as] if he was going to hit [M.A.J.] first."

Officer Christi Kathleen Bergh of the Austin Police Department investigated the incident.  Bergh testified that when she found M.A.J. at the apartment complex, he "was very uncooperative.  He was very abrasive and it took us a while to try to talk him down and to get him to calm down.  When we tried to get information, he finally just said that [S.K.] made him upset due to some comments he had made and that he broke his hand on his face."  M.A.J. also told Bergh "that he had anger management problems and that [S.K.] made him upset and he couldn't control himself."

The only witness to testify on behalf of M.A.J. was Sharon Simmons, an adult resident at the apartment complex who claimed to have witnessed the altercation.  According to Simmons, S.K. said "F**k Blue" as he was walking past M.A.J. and began "bucking up" to him, which Simmons described as having his hands in a fist and his chest puffed out, as if he was "coming towards a person."  Then, Simmons recalled, M.A.J. asked S.K., "What did you say?"  S.K. responded, "You heard me."  After that, Simmons testified, M.A.J. "got up and hit him."  On cross-examination, when asked "who threw the first punch," Simmons admitted, "[M.A.J.]"

After hearing the evidence and listening to argument from both sides, the juvenile court recited its findings orally.  Finding the testimony of the defense witness, Simmons, "completely unbelievable" and having "no reason to doubt the State's witnesses," the juvenile court

found that the State had proven beyond a reasonable doubt that M.A.J. had assaulted S.K. The juvenile court then adjudicated M.A.J. delinquent. This appeal followed.

## STANDARD OF REVIEW

Adjudications of delinquency in juvenile cases are based on the criminal standard of proof. *See* Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2009). Therefore, we review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.).

In a factual-sufficiency review, we view the evidence in a neutral light and ask whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine (1) whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or (2) whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 414-15. We will not reverse a verdict for factual insufficiency unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the fact-finder's verdict. *Id*. at 417. Nor will we intrude on the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The trial judge is the fact-finder in bench trials, and we give the same deference to a trial judge's credibility and weight determinations as we would a jury's. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).

**ANALYSIS**

In his sole point of error, M.A.J. asserts that the evidence is factually insufficient to prove that he did not act in self-defense. We disagree.

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a) (West Supp. 2009). "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. *Id*. § 1.07(a)(42) (West Supp. 2009). The defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Lee v. State*, 259 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Once the defendant produces such evidence, the State has the burden of persuasion in disproving self-defense. *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). The State's burden of persuasion does not require it to produce evidence refuting the self-defense claim. *Id*. at 913. Rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id*.

To support his self-defense claim, M.A.J. points to the testimony of A.V.C. and Simmons, both of whom claimed that they heard S.K. actually say the words, "F**k Blue" and that S.K. was in a fighting stance and "bucked up" to M.A.J. prior to M.A.J. hitting him. Viewing this evidence in a neutral light, we cannot say that the juvenile court's finding that the State proved its case beyond a reasonable doubt was "clearly wrong and manifestly unjust" or "against the great weight and preponderance of the conflicting evidence." *See Watson*, 204 S.W.3d at 414-15. The use of force against another is not justified in response to verbal provocation alone. Tex. Penal Code Ann. § 9.31(b)(1). Therefore, even if S.K. had said those words to M.A.J. (which the juvenile court

5

was free to disbelieve), this alone would not justify M.A.J.'s use of force against S.K. *See Trammell v. State*, 287 S.W.3d 336, 342 (Tex. App.—Fort Worth 2009, no pet.). As for the testimony about S.K.'s aggressive behavior, the juvenile court could have simply found this testimony not credible, and such a finding would not have been against the great weight and preponderance of the evidence. S.K. denied saying or doing anything to provoke M.A.J., and L.L. testified similarly. We must defer to the fact finder's decision regarding what weight to give contradictory testimonial evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008). Moreover, Officer Bergh testified that M.A.J. told her that "he had anger management problems and that [S.K.] made him upset and he couldn't control himself." Also, when asked "who threw the first punch," L.L., A.V.C., and Simmons each testified that it was M.A.J. Thus, the juvenile court could have reasonably inferred from this and other evidence that it was M.A.J. and not S.K. who was the aggressor.

We conclude that the evidence is factually sufficient to disprove M.A.J.'s theory that he acted in self-defense. We overrule M.A.J.'s sole point of error.

## CONCLUSION

We affirm the order of the juvenile court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: February 26, 2010

6