**Affirmed and Opinion Filed March 31, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01661-CR

**JULIO CESAR VILLALBA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1258991-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

A jury convicted appellant Julio Cesar Villalba of murder and sentenced him to seventy-years' imprisonment. On appeal, he argues the trial court erred by refusing to submit charge instructions on self-defense and the lesser-included offense of manslaughter. He further contends the trial court erred during the punishment phase by refusing to submit a sudden passion instruction and by admitting a handgun. We affirm the trial court's judgment.

### Background

In the early morning hours of August 11, 2012, Tory Fuller and Katisha Perry were parked in front of a vacant lot on Perry's street. She lived two houses down from the vacant lot and Villalba lived next to the vacant lot on the other side. At the time, Villalba's car was parked in front of his home. If Perry and Fuller needed to leave, they would "have had to back up a little bit, but not a lot and just pull straight out."

Perry testified they were in the back seat of the car "doing girlfriend and boyfriend stuff" when Villalba knocked on the window with a gun. At first they did not notice the gun because it was in "like a Ziploc bag, but it had paper on it." But then he took it out and knocked on the window again. Villalba told them to "Get the eff out in front of my house," even though they were not parked in front of his house. Perry then climbed to the front passenger seat, and Fuller opened the back door and walked to the driver's side door. Perry said the men started talking, but she could not hear the conversation. Villalba then started counting and shooting towards Fuller's feet. Fuller jumped in the car, and Perry said she told Fuller, "come on, let's go to the store." Perry thought Villalba fired three or four shots at the ground.

According to Perry, Villalba then walked four or five steps away from the car, and she thought the situation had ended. However, Villalba turned around and started shooting at an angle into the car's front driver's side windshield. Perry described it as "one of them 'I don't care' moments" because Villalba was just shooting in the car like "he didn't give a damn who he hit." It was like "both of y'all can go."

Although Fuller had time to turn the car on, Perry testified Villalba started shooting before Fuller shifted the car into gear to leave. Villalba then fled the scene in his car.

When paramedics arrived, they found the car in park, the engine revving, and Fuller sitting in the driver's seat slumped over. Perry was covered with blood splatter.

One of the bullets struck Fuller in the neck and severed both his right and left carotid artery and his jugular vein. He died on the scene, and the medical examiner concluded the cause of death was a gunshot wound to the neck. Perry was not injured from the gunfire.

Francisco Gonzales, a crime scene analyst with the Dallas Police Department, testified scrape marks, consistent with someone shooting into the ground, were present on the cement. He observed three possible defects in the road near the scene.

Sergeant Leopold Gonzalez served as a detective on the case. He testified neither the murder weapon[1] nor Villalba's car were ever located. He further testified Villalba turned himself in three days after the crime.

Villalba's sister, Ruth, testified for the defense. She woke up around 3:20 a.m. on August 11, 2012 to yelling and arguing outside her home. She looked out her upstairs bedroom window and saw Fuller and Perry inside the front seat of the car and Villalba outside the driver's side door. She testified Villalba started walking back to move his car so Fuller and Perry could leave. As Fuller backed his car up, she heard Perry yell, "Run him." She was certain Fuller backed his car up because she saw reverse lights. She claimed Fuller hit Villalba's car, and "it moved a little bit back." When Fuller hit Villalba's car, Villalba was on the driver's side of his car. She testified Villalba did not pull a gun until after Fuller hit his car.

Ruth then saw Villalba walk towards the driver's side of Fuller's car, point the gun up, and fire two shots. Villalba then put the gun down by his side.

On cross examination, Ruth remembered telling a detective she woke up that morning and heard a woman say, "Okay, we're going to leave now." She also admitted she told Detective Gonzalez that Villalba first fired two shots up into the air. However, she did not see Villalba shoot into the windshield because she went to get her mother. She did, however, hear shots while she was getting her mother. When she came back, she then saw Villalba get into his car and leave.

After both sides rested, defense counsel requested an instruction on self-defense because "through Ruth's testimony, I think there - - hitting the car - - my client's car with the client being nearby, so he can have an apprehension of fear of being threatened by a deadly weapon, a vehicle." The trial court denied the request.

---

[1] During the punishment hearing, Villalba testified he took the gun apart and threw it in a pond.

Defense counsel also requested an instruction on the lesser-included offense of manslaughter. He argued manslaughter was raised through Perry's testimony "about his angular shooting," and because the car's windows were tinted, "it might be possible that, looking at it from the actor's standpoint, he could not see clearly inside the vehicle to see what bodies were where at the time of the firing." The trial court denied the request.

The jury found Villalba guilty of murder. The punishment phase then continued before the jury. The State introduced Villalba's prior convictions, which included two separate incidents of fleeing and evading arrest, two separate incidents of marijuana possession, and failure to ID. Villalba also testified and based on his testimony, defense counsel requested an instruction on sudden passion. The trial court denied the request. The jury sentenced Villalba to seventy years' confinement, and this appeal followed.

**Self-Defense**

In his first issue, Villalba argues the trial court's refusal to instruct the jury on self-defense resulted in harmful error. The State responds nothing in the record raised the issue of self-defense; therefore, the trial court did not err in denying the requested instruction.

When reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). We review the trial court's decision not to include a defensive issue in the jury charge for an abuse of discretion. *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West

2007). This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. *Id.* at 209. On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

The defendant bears the burden of showing that some evidence exists to support each element of the defense. *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007). In this case, Villalba used deadly force when he shot Fuller with a gun because a gun is capable of causing death or serious bodily injury. *Trammell v. State*, 287 S.W.3d 336, 341 (Tex. App.—Fort Worth 2009, no pet.). Therefore, to be entitled to a self-defense instruction, Villalba was required to present some evidence demonstrating his reasonable belief that shooting the gun was immediately necessary to protect himself from Fuller's use or attempted use of deadly force. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a)(1) (West 2011).

Villalba relies on Ruth's testimony in which she stated Fuller backed into Villalba's car while he was standing nearby and "running a motor vehicle, a 'dangerous weapon,' at someone is an aggravated assault," from which he should be permitted to defend himself. However, Ruth's testimony does not establish that Villalba was justified in using deadly force to protect himself. While a car can be a deadly weapon if it is driven so as to endanger lives, it is not a deadly weapon per se. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Parrish v. State*, 647 S.W.2d 8, 10 (Tex. App.—Houston [14th Dist.] 1982, no pet.). In the present case, there is no evidence Fuller drove his car in a manner intended or capable of causing death or

serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2014) (defining "deadly weapon" as "anything that is in the manner of its use or intended use capable of causing death or serious bodily injury"). Ruth testified she heard the two men arguing. Then, as Fuller backed his car up, she heard Perry yell, "Run him." She claimed Fuller hit Villalba's car, and "it moved a little bit back." When Fuller hit Villalba's car, Villalba was on the driver's side of his car. When viewed in the light most favorable to Villalba, which includes consideration of Perry's "Run him" statement, Ruth's testimony does not establish Fuller made any threatening remark to Villalba or drove his car in a manner capable of causing death or serious bodily injury. Ruth did not testify Fuller accelerated backwards in an attempt to hit Villalba. Rather, she testified the impact moved Villalba's car "a little bit back."

Further, the record does not contain evidence that Villalba reasonably believed deadly force was immediately necessary to protect himself. A "reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42).

During the charge conference, defense counsel argued that because Villalba was standing near his car when Fuller allegedly backed up, "he [could] have an apprehension of fear of being threatened by a deadly a weapon, a vehicle." Villalba did not testify during the guilt/innocence phase so the jury did not hear any testimony from him about whether Fuller's driving behavior caused him to feel any fear or apprehension. Likewise, Ruth did not provide any such evidence. However, even if Villalba thought Fuller intended to cause him harm, Villalba could have simply walked away. The record is clear Fuller did not have a gun or any other deadly weapon in his possession when Villalba killed him. As such, grabbing a gun from his car and shooting into Fuller's windshield was not an immediately necessary response to protect himself from Fuller backing up his car near Villalba. *See, e.g., Trammell*, 287 S.W.3d at 341 (holding defendant was

not entitled to self-defense instruction despite decedent pointing a knife at defendant earlier in the evening and even if defendant thought decedent intended to cause him harm, defendant could have simply driven away from the scene; "shooting the gun was not an immediately necessary response").

Viewing the evidence in the light most favorable to Villalba, he failed to meet his burden of showing that some evidence existed to support each element of his self-defense claim. *Shaw*, 243 S.W.3d at 657; *Ferrel*, 55 S.W.3d at 591. Accordingly, the trial court did not err in denying his requested instruction. We overrule Villalba's first issue.

### Lesser-included Offense Instruction

In his second issue, Villalba argues the trial court erred by denying his request for an instruction on the lesser-included offense of manslaughter. The State responds Villalba was not entitled to such an instruction because there was no evidence he was guilty only of the lesser offense.

As previously stated, when reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo*, 175 S.W.3d at 743. The determination of whether a defendant is entitled to a lesser-included offense instruction requires a two-step analysis: (1) whether the requested charge is for a lesser-included offense of the charged offense; and (2) whether there is evidence that supports giving the instruction to the jury. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011).

The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Id*. This is a question of law and is not dependent on the evidence produced at trial. *Id*. The second step of the lesser-included offense analysis is to determine if there is some evidence in the record that would permit a jury to rationally find that,

if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012).

Both parties agree manslaughter is a lesser-included offense of murder; therefore, we focus our analysis on whether the evidence presented at trial would permit a jury to rationally find that, if Villalba is guilty, he is guilty only of manslaughter. The penal code defines manslaughter as recklessly causing the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person acts reckless with respect to circumstances surrounding his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. *Id.* Further, there must be some affirmative evidence from which a rational juror could infer that Villalba was aware of but consciously disregarded a substantial risk that death would occur as a result of his conduct. *Cavazos*, 382 S.W.3d at 385. While it is true the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense. *Id.* Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Id.*

Villalba again relies on testimony from Ruth and Perry to support his position. He quotes Perry's testimony in which she described the shooting as "one of them 'I don't care' moments" because Villalba was just shooting in the car like "he didn't give a damn who he hit." Villalba

also cites to Ruth's testimony in which she described Villalba getting the gun from his car, pointing the gun up, and firing two shots.

The evidence Villalba relies on does not affirmatively raise the lesser-included offense of manslaughter while negating an element of murder. Specifically, the evidence does not support that Villalba acted only recklessly when he killed Fuller. Perry explained how Villalba approached the car, banged on the window with a gun, and shot several times towards the ground when Fuller tried to get out of the car. Villalba then walked away before turning back around and shooting into the windshield. While Perry testified Villalba did not seem to care who he shot, she specifically stated Villalba knew both she and Fuller were inside the car, and he "pointed that gun at that window." Thus, this evidence indicates Villalba intended to shoot someone when he fired his gun into the windshield. His intentional conduct did not turn into a reckless act because he did not care which person he hit. The evidence does not support a finding of recklessness and does not rise to the level that would convince a rational jury to find that if Villalba was guilty, he was guilty only of the lesser-included offense of manslaughter. *See, e.g., Cavazos*, 382 S.W.3d at 385 (holding defendant was not entitled to lesser-included offense instruction because "pulling a gun, pointing it at someone, pulling the trigger twice, fleeing the scene, and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference defendant acted recklessly at the moment he fired the shots").

Because the evidence presented at trial did not establish manslaughter as a valid, rational alternative to murder, the trial court did not err by denying defense counsel's requested instruction. We overrule Villalba's second issue.

## Sudden Passion

In his third issue, Villalba argues the trial court erred during the punishment phase by denying his request for a sudden passion instruction. The State responds the record does not support sudden passion or adequate cause.

During the punishment phase, a defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id*. § 19.02(a)(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of prior provocation." *Id*. § 19.02(a)(2). The defendant has the burden of production and persuasion with respect to the issue of sudden passion. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

To justify a sudden passion instruction, the record must at least minimally support an inference that: (1) the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed between the provocation, passion, and homicide. *Id*. It does not matter that the evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable. *Id*. If the evidence raises the issue from any source, during either phase of trial,

then the defendant has satisfied his burden of production, and, if requested, the trial court must submit the issue in the jury charge. *Id.*

When reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo*, 175 S.W.3d at 743. If the reviewing court determines the trial court erred by failing to submit a sudden passion instruction, only then does it analyze whether the error harmed the defendant. *Wooten*, 400 S.W.3d at 606.

Villalba testified that he had seen Fuller with a gun in the past. He also testified he felt scared and threatened by Fuller because of two previous incidents, one of which involved Fuller beating him up.

When questioned about the night of the shooting, Villalba explained he parked right behind Fuller's car and then knocked on the window. When no one answered, he went back to his car and retrieved the gun because "I just felt threatened that - - the first knocks didn't do nothing, and nobody's saying or doing anything so - -." When he knocked on the window with the gun, his intent was to get them to leave. "[M]y intentions were not to pull out the gun and try to do everything that occurred." Villalba said the two men started arguing, and he got angry when Fuller started saying things like, "I'm gonna get you back. . . he wanted to probably retaliate later."

Villalba admitted he realized what he was doing was wrong so he walked back to his car to move it. While he was standing beside his car with the door open, he testified Fuller "bumped" into his car. Although he first described it as a "threatening bump," he later admitted it only moved his car a little. He said, "it kind of frightened me a little that he was gonna come try to reverse faster." When he fired the shots into the windshield, he said it was "accidental"

and that the gun was "real sensitive." Afterwards, he thought he had missed, and he was hoping he had not shot Fuller. He ran away because he was scared and panicked.

Defense counsel requested a sudden passion instruction because of the previous interactions between Fuller and Villalba and because Fuller bumped Villalba's vehicle in a threatening manner. The trial court overruled the request because there was no evidence of adequate cause or that the shooting was accidental. We agree with the trial court's ruling.

First, we cannot consider any previous interactions between Villalba and Fuller because sudden passion must arise at the time of the offense and cannot result solely from former provocation. *Kelley v. State*, No. 05-09-01438-CR, 2012 WL 2628074, at *7 (Tex. App.— Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication). Second, Villalba did not provide any testimony that Fuller bumping into his car produced a "degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (defining "adequate cause"). Rather, Villalba testified the bump moved his car a little and it "kind of frightened me a little." Thus, we conclude the trial court did not err by finding there was no evidence of adequate cause.

Further, Villalba described the shooting as accidental, and he hoped he did not hit Fuller. Although an accident defense does not preclude a sudden-passion instruction, there must be some evidence to indicate that the appellant acted under the influence of sudden passion, even if that evidence is contrary to other evidence in the case. *McKinney v. State*, 179 S.W.3d 565, 571 (Tex. Crim. App. 2005). The record contains no such evidence.

Accordingly, the trial court properly denied Villalba's request for a sudden passion instruction. We overrule his third issue.

**Admission of Evidence During Punishment**

In his final issue, Villalba asserts the trial court abused its discretion by admitting a handgun during the punishment hearing. Specifically, he contends that because no one saw him with the handgun during the commission of the extraneous offense, "there is no way that a jury could rationally find that the Appellant was criminally responsible for possessing the handgun." The State responds the trial court acted within its discretion in admitting the handgun, and even if the trial court erred, Villalba was not harmed.

We review a trial court's decision to admit punishment evidence under an abuse of discretion. *Davis v. State*, 68 S.W.3d 273, 282 (Tex. App.—Dallas 2002, pet. ref'd). The Texas Code of Criminal Procedure permits trial courts to admit evidence deemed relevant to sentencing, including evidence of other crimes or bad acts. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014). During punishment, relevant evidence is that which assists the fact finder in determining the appropriate sentence given the particular defendant in the circumstances presented. *Davis*, 68 S.W.3d at 282–83. When a proper objection is made, the trial court has the responsibility to determine the threshold issue of whether an extraneous offense is relevant. *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.). Then the jury, as the exclusive judge of the facts, is to determine whether or not the State has proved the extraneous offense beyond a reasonable doubt. *Id*. The trial court satisfies its initial responsibility by making a determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *Id*. This threshold determination is not a finding by the court that the State has proved an extraneous offense beyond a reasonable doubt, but instead a finding that sufficient evidence exists from which a jury could reasonably so find. *Id*.

Deputy Tim Allman testified that on the evening of November 30, 2011, he initiated a traffic stop after he saw a car driving without its headlights. Villalba was the driver of the car. When Deputy Allman got out of his car, he dropped his flashlight and when he leaned over to pick it up, Villalba drove off. Deputy Allman pursued the car through a neighborhood. Villalba eventually stopped his car in front of a house, got out, and ran away. As Deputy Allen chased Villalba, he noticed Villalba reaching his hands in the front pockets of his hoodie, "like he was messing with something as he was running." Deputy Allman thought Villalba had a gun so he stopped chasing him. Villalba ran behind a fence into a backyard, and Deputy Allman radioed for back up. As he talked to the dispatcher, Villalba reappeared with his hands up.

When Deputy Gray arrived as back up, Deputy Allen already had Villalba in custody. Deputy Allen shared his suspicion that Villalba threw something in the backyard so Deputy Gray searched the area. He found a fully loaded magazine in Villalba's backyard and a gun in the back of the next door residence. Although Deputy Gray admitted he found no direct evidence linking the gun to Villalba, he saw fresh footprints in the dew on the grass in the area where the magazine was found. He further testified the magazine matched the gun.

Based on this testimony, evidence supported the conclusion that Villalba possessed and then discarded the gun prior to Deputy Allen arresting him. Accordingly, the trial court did not abuse its discretion by determining the jury could find beyond a reasonable doubt that Villalba possessed the gun. *Arzaga*, 86 S.W.3d at 781. Villalba's fourth issue is overruled.

**Conclusion**

Having overruled Villalba's issues, the judgment of the trial court is affirmed.

Do Not Publish          /David L. Bridges/
TEX. R. APP. P. 47          DAVID L. BRIDGES
131661F.U05          JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JULIO CESAR VILLALBA, Appellant

No. 05-13-01661-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1258991-Q.
Opinion delivered by Justice Bridges.
Justices Fillmore and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered March 31, 2015.